# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

CHERI COUGHLIN,

                              Plaintiff,

   v.                                                     6:12-CV-645 (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

PETER W. ANTONOWICZ, ESQ., for Plaintiff
JOANNE JACKSON, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Thomas J. McAvoy, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

On January 24, 2010, Cheri Coughlin ("plaintiff"), protectively filed[1] for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), with an onset date of June 19, 2009. (Administrative Transcript ("T") 160–67). Plaintiff's claims were initially denied on April 22, 2010. (T. 81–84). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on April 25, 2011. (T. 44–73). On July 12, 2011, the ALJ found plaintiff was not

---

[1] Protective filing indicates that a written statement has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* C.F.R. § 416.340. There are various requirements for this written statement. (*Id.*). If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

disabled. (T. 23–30). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied a request for review on March 12, 2012. (T. 1–6).

## II. ISSUES IN CONTENTION

Plaintiff makes the following arguments:

(1) The ALJ erred in finding that plaintiff's spinal impairments were not "severe" under the regulations. (Pl.'s Br. 9–12).

(3) The ALJ failed to give adequate weight to the opinion of treating physician, Kin Tsoi. (Pl.'s Br. 13–15).

(4) The ALJ's RFC determination was not supported by substantial evidence. (Pl.'s Br. 13–18).

(5) The ALJ improperly evaluated plaintiff's credibility. (Pl.'s Br. 18–20).

Defendant argues that the ALJ's decision is supported by substantial evidence and must be affirmed. For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint.

## III. APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity

that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

3

whether the correct legal standards were applied and whether substantial evidence supported the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a

4

reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## IV. <u>FACTS</u>

Plaintiff's counsel has extensively stated the medical and vocational facts in his brief. (Pl.'s Br. 3–6). Defense counsel has incorporated plaintiff's summary, "without any inferences, contentions, or conclusions asserted by Plaintiff." (Def.'s Br. 1) (Dkt. No. 13). Defense counsel has also incorporated the facts as stated in the ALJ's July 12, 2011 decision. (*Id.*) This court will also incorporate the facts as stated by both counsel, with any exceptions as noted in the discussion below.

## V. <u>ALJ DECISION</u>

The ALJ found that plaintiff met the insured status requirements through December 13, 2013, and that plaintiff had not engaged in substantial gainful activity since June 19, 2009, her alleged onset date. (T. 25). The ALJ considered plaintiff's alleged impairments and found that her headaches and thyroid nodules were severe impairments, but that plaintiff's impairments did not meet or medically equal one of the listed impairments. (T. 25).

The ALJ found that plaintiff had the residual functional capacity to perform a full range of sedentary work. (T. 26–28). He also found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements as to the intensity, persistence and limiting effects of these symptoms were not credible to the extend they were inconsistent with

the ALJ's RFC determination. (T. 28).

The ALJ held that plaintiff was capable of performing her past relevant work as a school nurse, as plaintiff described the work, and as generally performed in the national economy. (T. 28). Alternatively, the ALJ proceeded to Step 5 and found that there were other jobs existing in the national economy that plaintiff could perform. (T. 28–29). The ALJ concluded that plaintiff was not disabled under the Social Security Act. (T. 29).

## VI. DISCUSSION

### A. Severe Impairments

#### 1. Legal Standards

The claimant bears the burden of presenting evidence establishing severity at Step 2 of the disability analysis. *Briggs v. Astrue*, No. 5:09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Report-Recommendation), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at Step 2 if it does not significantly limit a claimant's ability to do basic work activities). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of

6

judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). It is quite clear from these regulations that "severity" is determined by the limitations imposed by an impairment, and not merely its by diagnosis. The "presence of an impairment is . . . not in and of itself disabling within the meaning of the Act." *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995) (citations omitted).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.' " *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3). The Second Circuit has held that the Step 2 analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de minimis* level, then the remaining analysis of the claim at Steps 3 through Step 5 must be undertaken. *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at Step 2 may be harmless because the ALJ continued with sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be

considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

### 2. Application

In this case, plaintiff argues that the ALJ erred in finding that plaintiff's spinal impairments were not severe. (Pl.'s Br. 9–12). Plaintiff argues that she suffers from "degenerative back disease, lumbosacral spine with radiculopathy; back pain thoracic region, neuritis, lumbosacral and lumbar radiculitis," and that the ALJ failed to consider these impairments. (Pl.'s Br. 10). In support of this argument, plaintiff cites to a Medical Source Statement dated April 15, 2011, in which her treating physician, Dr. Tsoi, states that plaintiff would only be able to stand or walk for 2 hours or less in an 8-hour day and sit upright for 2 hours or less in an 8-hour day, and that plaintiff's pain would cause her to be off-task for at least 50% of the time in an 8-hour workday. (T. 356–57). Dr. Tsoi stated that plaintiff's midthoracic pain, lower lumbar pain, and radicular symptoms in the thoracic region were the objective findings supporting his opinion as to plaintiff's limitations. (T. 357).

The ALJ acknowledges that plaintiff complained of lumbar pain, but noted that there were "no findings." (T. 25). Plaintiff's characterization of Dr. Tsoi's classification of the different qualities of plaintiff's back pain as "objective findings" does not transform plaintiff's complaints of back pain into an impairment, supported by objective clinical findings. In addition, as will be discussed below, the ALJ specifically cites to Dr. Tsoi's report and states that in April 2011, plaintiff "had midthoracic pain and lower lumbar pain with positive radicular symptom in thoracic

8

region" as part of the ALJ's RFC determination. (T. 28). Because the ALJ considered plaintiff's back pain as part of his RFC analysis and did not deny plaintiff's claim at Step 2 of the sequential analysis, this court finds that any error by the ALJ in not finding plaintiff's spinal impairments to be sever was harmless.

### C. Treating Physician/RFC

#### 1. Legal Standard

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

While a treating physician's opinion is not binding on the Commissioner, the

9

opinion must be given controlling weight when it is well supported by medical findings and *not inconsistent with other substantial evidence*. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is *not* required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 2. Application

Plaintiff argues that the ALJ did not accord Dr. Tsoi's opinion "any specific amount of weight." (Pl.'s Br. 4). This is incorrect. The ALJ stated that Dr. Tsoi's opinion was not supported by objective clinical findings and was inconsistent with other substantial evidence, and therefore accorded Dr. Tsoi's opinion only *some* weight. (T. 28). The ALJ considered Dr. Tsoi's opinion in conjunction with the medical evidence as well as with Dr. Ganesh's consultative examination, and found that plaintiff was capable of performing the full range of sedentary work. (T. 26–28).

On January 8, 2009, physician's assistant (PA) Matt Labella of the Spine and Pain Clinic stated that plaintiff's back pain had improved with her recent prescription for Norflex. (T. 258). PA Labella noted that plaintiff was not exhibiting any excessive pain behavior, and plaintiff reported walking for exercise 5–6 times per week. (T. 259). PA Labella stated on February 6, 2009, that plaintiff continued to tolerate her medications, and that she still experienced back pain. (T. 261).

On March 6, 2009, plaintiff reported to PA Labella that overall she was doing well, and she was tolerating her medications without side effects. (T. 264). She was still walking for exercise 5–6 times per week. (T. 265). Plaintiff continued to do well on her medication in April 2009. (T. 267).

Dr. Jafar Siddiqui of the Spine and Pain Clinic examined plaintiff on June 9, 2009, ten days prior to plaintiff's alleged date of onset, and stated that plaintiff had been running low on her medications and was using them sparingly, but that she was doing well without the medications. (T. 269). Plaintiff told Dr. Siddiqui that she did not want any intervention at the time. (*Id.*). Dr. Siddiqui found plaintiff had decreased lumbar lordosis, tenderness in the right and left L3–S1, and trigger points in the right lumbar paraspinal muscles, right quadratus lumborum muscle, left lumbar paraspinal muscles, and left quadratus lumborum muscle. (T. 271). Dr. Siddiqui instructed plaintiff to continue her medications and maintain her activity level. (T. 271).

On July 31, 2009, plaintiff told Dr. John Minor of the Spine and Pain Clinic that her back had been bothering her a "bit more since [riding] a long time in a car." (T. 272). Plaintiff requested refills of her medications, but refused injection therapy. (*Id.*). Dr. Minor noted that plaintiff "ambulates well and has a normal reciprocal gait." (T. 274).

Plaintiff did well throughout the rest of 2009. Dr. Tsoi, also with the Spine and Pain Clinic, noted on August 31, 2009, that plaintiff's back pain was "stable," and that she exhibited "no excessive pain behavior." (T. 276, 278). Plaintiff's lumbar exam

11

revealed tenderness in the right and left L1–L2, with no trochanteric tenderness bilaterally, no tenderness in right or left side sacroiliac joints, and no right or left lumbar trigger points were present. (T. 278). Dr. Tsoi instructed plaintiff to continue her pain medication regimen and to maintain her current level of activity, which included walking 5–6 times per week for exercise. (T. 279). Dr. Tsoi reported plaintiff's back pain was again stable on September 28, 2009, and a lumbar exam revealed plaintiff had tenderness in the right and left L1–L2 and L2–L3, and that right and left straight leg raises were negative. (T. 281–82). Plaintiff was again instructed to maintain her current level of activity. (T. 282).

On October 26, 2009, plaintiff reported that her back pain was stable with her pain medication, and that she was still walking 5–6 times pers week for exercise. (T. 284). A lumbar exam revealed tenderness in the left and right L1–L2 and L2–L3. (T. 285). Plaintiff was again encouraged to maintain her current level of activity. (T. 286). On November 23, 2009, plaintiff reported that her back pain was stable and also that she had not had more radicular pain in the previous weeks. (T. 288). A lumbar exam revealed tenderness in both sides the left and right L1–L2 and L2–L3. (T. 290).

Plaintiff's back pain was worse on February 2, 2010, apparently because she had been one week without pain medication due to an insurance issue, but her pain was back under control by March 2010, and she reported it was stable in November 2010. (T. 296, *see also* T. 292, 299, 344).

Dr. Ganesh performed a consultative examination of plaintiff on April 16, 2010. (T. 302–05). Dr. Ganesh noted that plaintiff appeared to be in no acute distress and

12

had a normal gait. (T. 303). Plaintiff could walk on heels and toes without difficulty, could squat fully, and had a normal stance. (*Id.*). Plaintiff used no assistive devices, could rise from a chair without difficulty, and could get on and off the exam table without assistance. (T. 303). Dr. Ganesh found that plaintiff's cervical spine exhibited full flexion, extension, full flexion bilaterally, and full rotary movement bilaterally. (T. 304). Plaintiff's spine exhibited no scoliosis, kyphosis, or abnormality. (*Id.*). Plaintiff's lumbar spine exhibited flexion of 60 degrees, extension of 10 degrees, lateral flexion of 5 degrees bilaterally, and rotary movement of 5 degrees bilaterally. (*Id.*). Straight leg raises were negative bilaterally, and plaintiff exhibited a full range of motion in both of her shoulders, elbows, forearms, wrists, hips, knees, and ankles. (*Id.*). Plaintiff's strength was 5/5 in her upper and lower extremities. (*Id.*). Dr. Ganesh concluded that plaintiff had no limitations to sitting, standing, or walking, and had moderate limitations in lifting, carrying, pushing, and pulling. (T. 305).

A lumbosacral spine x-ray on April 20, 2010, revealed that the height of the vertebral bodies and intervertebral disc spaces were "relatively well maintained" and the pedicles were intact throughout. (T. 306). On January 3, 2011, Dr. Tsoi stated that plaintiff's back pain remained "stable with her pain medication and no issue at this time." (T. 350). A lumbar exam revealed tenderness in the left and right L3–S1, left and right straight leg raises were negative, and there was some tenderness bilaterally in the midthoracic paraspinal muscles. (T. 351). Plaintiff was instructed to maintain her current level of activity and continue her pain medications. (T. 352). On February

13

3, 2011, plaintiff's back pain remained stable with pain medication, with similar results from her lumbar exam. (T. 353–54).

However, Dr. Tsoi completed a Medical Source Statement dated April 15, 2011, and stated that plaintiff could only stand or walk for 2 hours or less in an 8-hour day and sit upright for 2 hours or less in an 8-hour day. (T. 356). Dr. Tsoi also checked a blank next to a statement: "Pain is present and found to be incapacitating to this patient causing this individual to be off-task for at least 50% of the time in an 8-hour workday" due to her midthoracic pain, lower lumbar pain, and radicular symptoms in the thoracic region. (T. 357).

The ALJ considered Dr. Tsoi's report, other medical records from the Spine and Pain Clinic, Dr. Ganesh's consultative examination, and other medical evidence. (*See* T. 26–28). The ALJ found that Dr. Tsoi's report was inconsistent with the other substantial evidence. (T. 28). Dr. Tsoi's opinion in his medical source statement was based on the different classifications of back pain plaintiff experienced, but no other objective clinical findings were indicated, and the records from the Spine and Pain Clinic where Dr. Tsoi worked indicate that plaintiff's pain was adequately managed by her medication. Plaintiff continued her treatment as prescribed and refused additional treatment options. Dr. Ganesh's consultative examination provides further substantial evidence which is consistent with the other medical evidence. Accordingly, substantial evidence supports the ALJ's decision to accord Dr. Tsoi's Medical Source Statement only "some weight," as well as the ALJ's conclusion that plaintiff could perform a full range of sedentary work. (T. 28).

### D. Credibility

#### 1. Legal Standard

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of

the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

### 2. Application

Plaintiff argues that the ALJ did not properly assess plaintiff's credibility. (Pl.'s Br. 18–20). However, as discussed above, plaintiff repeatedly reported to her medical providers at the Spine and Pain Clinic that she was doing well on her medication with no side effects. (*See* T. 261, 264, 267, 269, 276, 279, 284, 289). The only time plaintiff complained of a difficulty with her medication to her doctor was when plaintiff reported in February 2011 that Cymbalta caused numbness in her face. (T. 353). Plaintiff reported that she felt "much better" after stopping Cymbalta. (T. 353).

Yet plaintiff testified at her hearing that she experienced dry mouth, fatigue, and forgetfulness as side effects of her pain medication. (T. 57). Plaintiff's testimony was that her impairments were much more severe than indicated in any medical records. Plaintiff testified that she could only sit upright for less than 10 minutes without having to lean on something or otherwise support herself. (T. 59). She also testified that she could only walk 10 or 15 minutes without having to take a break. (*Id.*). However, plaintiff reported to Consultative Examiner Dr. Ganesh that she cooked and

16

cleaned three to four times a week, did her laundry once a week, did her shopping, showered four to five times per week, could dress herself, and that her activities were watching television, listening to the radio, and reading. (T. 303).

As described above, plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms are not supported in the medical record, and conflict with her statements to her medical care providers and consultative examiner. The ALJ's assessment of plaintiff's credibility is therefore supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: April 30, 2013

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge